UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

APPROXIMATELY $131,902.64 IN U.S. CURRENCY,
FORMERLY ON DEPOSIT IN ACCT. NO. 0006772714791
AT BBVA USA (NOW PNC BANK), AND

APPROXIMATELY $135,809.51 IN U.S. CURRENCY,
FORMERLY ON DEPOSIT IN ACCT. NO. 06791438193
AT BBVA USA (NOW PNC BANK),

    Defendants *In Rem*.

_____/

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The United States of America, through the undersigned Assistant United States Attorney, brings this complaint for forfeiture *in rem* and alleges:

**I.    NATURE OF THE ACTION**

1. This is a civil action *in rem*, pursuant to 18 U.S.C. § 981(a)(1)(C), and the procedures set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the Federal Rules of Civil Procedure, to forfeit a total of approximately $267,712.15 in U.S. currency that constitutes or is derived from proceeds obtained, directly or indirectly, as a result of wire fraud, and/or property traceable to such property. These funds, which were seized on or about May 2, 2023, and are currently in the custody of the United States, are more fully described as (collectively, the "Defendant Funds"):

(i) Approximately $131,902.64 in U.S. currency seized from account number 0006772714791 at BBVA USA (now, PNC Bank), held in the name of Individual 1 ("Defendant Account 1");

(ii) Approximately $135,809.51 in U.S. currency seized from account number 06791438193 at BBVA USA (now, PNC Bank), held in the name of Individual 2 ("Defendant Account 2").

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this subject matter. *See* 28 U.S.C. §§ 1345, 1355(a); 18 U.S.C. § 981(a)(1).

3. This Court has *in rem* jurisdiction over the Defendant Funds. *See* 28 U.S.C. § 1355.

4. Venue for this action is proper in this District because acts or omissions giving rise to the forfeiture occurred in the Southern District of Florida and also the Defendant Funds are located in this District. *See* 28 U.S.C. § 1355(b), 1395.

## III. FACTUAL ALLEGATIONS

5. All dates and amounts in this Complaint are approximate.

### A. Overview of CARES ACT and Economic Injury Disaster Loans

6. The CARES Act is a federal law enacted in or around March 2020 designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

7. The Economic Injury Disaster Loan ("EIDL") program is a U.S. Small Business Administration ("SBA") program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

2

8. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

9. To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was required to also certify that all information in the application was true and correct to the best of the applicant's knowledge.

10. Applicants for EIDL assistance submitted their applications directly to the SBA, and the applications were processed by the agency with support from a government contractor. The amount of the loan was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods of the company, as described above. SBA directly issues any funds issued under an EIDL to the applicant company. A company could use EIDL funds for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

**B.    The Scheme to Obtain an EIDL Using Stolen Identifying Information**

**<u>DEFENDANT ACCOUNT 1</u>**

11. On December 4, 2020, an individual using the name A.R. ("A.R.")[1] applied for an EIDL on behalf of Company 1 ("Company 1 EIDL Application"). The United States Secret Service ("USSS") obtained a copy of the EIDL application from the SBA and learned that the application

---

[1] A.R. resides in Delray Beach, Florida, which is located within the Southern District of Florida.

was electronically signed and submitted. The EIDL application directed the SBA to deposit the EIDL disbursement into account number 0006772714791 at BBVA USA ("Defendant Account 1"), which was held in the name of Individual 1 ("Individual 1").

12. The SBA approved Company 1's EIDL application and deposited $149,900.00 into Defendant Account 1 on or around December 8, 2020.

13. Defendant Account 1, which was established on May 22, 2019, maintained a $2.64 balance from October 1, 2020, until the SBA EIDL funds were deposited on or around December 8, 2020.

14. After the deposit of the SBA EIDL funds into Defendant Account 1, there were multiple point of sale transactions totaling $17,950.00 at a Deal Time Auto Sales in Bakersfield, California, and one Cash App transaction in the amount of $50.00. There were no other significant transactions—notably, no additional deposits—in Defendant Account 1 other than the activity described in this paragraph.

15. After Company 1's EIDL Application was approved, the SBA contacted A.R. via telephone to update him on the approval of her/his loans. A.R. informed the SBA that s/he was the owner of Company 1 but had never applied for an EIDL. SBA subsequently identified the loan as fraudulent and advised BBVA accordingly, which then placed an administrative hold on the funds.

16. Law enforcement also interviewed Individual 1, the authorized signer for Defendant Account 1, who said that s/he did not apply for the EIDL. Individual 1 stated that s/he did not know A.R. and had never heard of Company 1. Individual 1 claimed s/he had recently applied for a job and was contacted by an employer with hiring instructions. According to Individual 1, an unknown subject collected Individual 1's personal information and opened

4

Defendant Account 1 as part of her/his job requirements. Individual 1 was notified by this same individual that a large sum of money was going to be deposited into Defendant Account 1, and s/he was to convert that money into a check and send it to a limited liability company located in Kernersville, North Carolina. Individual 1 indicated that after receiving the funds s/he realized it must be a scam due to the large amount of money.

17. Law enforcement interviewed A.R. who confirmed that s/he did not apply for the EIDL. A.R. further confirmed that s/he did not authorize anyone to deposit funds into Defendant Account 1 on her/his behalf, and s/he was not aware of the existence of Defendant Account 1 until s/he was contacted by law enforcement. A.R. stated s/he does not know Individual 1, and s/he did not give anyone permission to use his personal identifying information.

## DEFENDANT ACCOUNT 2

18. On December 6, 2020, an unknown subject(s) using A.R.'s name applied for an EIDL on behalf of Company 2. The USSS obtained a copy of the EIDL application from the SBA and learned that the application was electronically signed and submitted. The EIDL application directed the SBA to deposit the EIDL disbursement into account number 06791438193 at BBVA USA ("Defendant Account 2"), which was held in the name of Individual 2 ("Individual 2").

19. The SBA approved the application and deposited $149,900.00 into Defendant Account 2 on December 14, 2020.

20. Defendant Account 2 was established on November 30, 2020. As of November 30, 2020, Defendant Account 2 held a $0.00 balance until the deposit of SBA funds.

21. After the deposit in December 2020, there were multiple online bank transfers totaling $14,100.00 from Defendant Account 2 to other accounts. Three transfers were made to an

account ending in *1638 totaling $11,100.00, and one transfer was made to an account ending in *2803 totaling $3,000.00. There were no other transactions in Defendant Account 2 other than the activity described in this paragraph after the deposit of the SBA funds and before the account was closed.

22. After the EIDL was approved, the SBA contacted A.R. via telephone to update him on the approval of his loans. A.R. informed the SBA that he was the owner of Company 2, but he had never applied for an EIDL. SBA subsequently identified the loan as fraudulent.

23. Law enforcement interviewed Individual 2, who confirmed that s/he did not apply for the EIDL. Individual 2 stated that s/he did not know an A.R. and had never heard of Company 2. Individual 2 stated that s/he had opened the BBVA account to receive unemployment. When the EIDL funds were deposited into her/his account, Individual 2 indicated that s/he believed it was her stimulus money, however, after seeing the amount deposited, s/he suspected the money to be a scam. Individual 2 denied ever being directed by any individual to open the account or receive any funds.

24. Law enforcement interviewed A.R. who confirmed that s/he did not apply for the EIDL. A.R. further confirmed that s/he did not authorize anyone to deposit funds into Defendant Account 2 on her/his behalf, and s/he was not aware of the existence of Defendant Account 2 until he was contacted by law enforcement. A.R. stated s/he does not know anyone who had Individual 2's name, and A.R. indicated that s/he did not give anyone permission to use her/his personal identifying information. A.R. denied any knowledge or ownership of the two accounts that received wires from Defendant Account 2.

25. On or about May 2, 2023, a seizure warrant was issued in the Southern District of

Florida for the funds previously on deposit in Defendant Account 1 and Defendant Account 2.  *See* Seizure Warrant [ECF No. 1], Case No. 23-MJ-8229-BER.

26. On or about May 3, 3023, this seizure warrant for the funds previously on deposit in Defendant Account 1 and Defendant Account 2 was executed.  *See* Return of Service [ECF No. 2], Case No. 23-MJ-8229-BER.

### IV. BASIS FOR FORFEITURE

27. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a "specified unlawful activity," is subject to civil forfeiture.  Wire fraud in violation of 18 U.S.C. § 1343 constitutes a specified unlawful activity, pursuant to 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

### FIRST CLAIM
### Proceeds of Wire Fraud
### (18 U.S.C. § 981 (a)(1)(C))

28. The factual allegations in paragraphs 1 to 26 are re-alleged and incorporated by reference herein.

29. As set forth above, the Defendant Funds constitute, or are derived from, proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343.

30. Accordingly, the Defendant Funds are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

**WHEREFORE**, Plaintiff, the United States of America, requests that the Clerk of the Court issue a warrant for the arrest of the Defendant Funds; that notice of this action be provided to persons known or thought to have an interest in or right against the Defendant Funds; that the

Defendant Funds be forfeited and condemned to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

                                                Respectfully submitted,

                                                **MARKENZY LAPOINTE**
                                                **UNITED STATES ATTORNEY**

By:    *s/ Annika M. Miranda*
           Annika M. Miranda
           Assistant United States Attorney
           Florida Bar No. 64975
           99 N.E. 4th Street, 7th Floor
           Miami, Florida 33132-2111
           Telephone: (305) 961-9303
           Facsimile: (305) 536-4089
           annika.miranda@usdoj.gov

## VERIFICATION

I, John T. Lear, hereby verify and declare, under penalty of perjury, that I am a Special Agent with United States Secret Service ("USSS") and that the foregoing factual allegations are true and correct to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a USSS Special Agent.

Executed on this 31st of January 2024.

John T. Lear
Special Agent, United States Secret Service